887 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Virginia L. EDWARDS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-5117.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judge, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Virginia L. Edwards appeals from a district court order affirming the Secretary's final decision that she was not disabled and, therefore, not entitled to supplemental security income. For the following reasons, we affirm the district court's judgment.
 
 I.
 
 2
 Edwards filed her application for supplemental security income on February 18, 1986, alleging a disability onset date of November 20, 1984. The Secretary denied claimant's application both initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge (ALJ), which was held on September 3, 1986.
 
 
 3
 The following evidence was introduced at the hearing.
 
 
 4
 Claimant was a 50 year-old female at the time. From the summer of 1982 to November 20, 1984, claimant worked at Shawnee Plastics where she operated a paint machine and painted parts.
 
 
 5
 On November 20, 1984, claimant was involved in an automobile accident. She complained of pain in her neck and on the right side of her back and was taken to Marshal County Hospital in Frankfort, Kentucky. X-rays of the lumbar spine revealed degeneration of L5-S1 disc, spondylosis deformans, and hyperlordosis.
 
 
 6
 On February 16, 1985, claimant was hospitalized for evaluation of neck and back pain, lumbar pain and radiation of pain into the lower extremity. Claimant's discharge diagnosis by Dr. Jennings, a neurologist, stated: "Osteodegenerative disc disease at L-5, S-1, aggravated by a flexion, extension injury, cervical and lumbar spine. Musculoskeletal pain syndrome related to degenerative disc disease, L5, S1, post-traumatic disc disease."
 
 
 7
 Claimant was referred to Dr. Hunter, a surgeon, for evaluation. On April 15, 1985, he performed a right L5-S1 decompressive hemilaminectomy with facetectomy at L5 and foraminotomy at L-5 and S-1. Claimant was discharged on April 20, 1985. Discharge medication was vicodin, # 30, for pain.
 
 
 8
 Dr. Hunter saw claimant on June 4, 1985, for a follow-up examination. Claimant reported deep medial groin pain and some soreness in calf muscles. Dr. Hunter advised plaintiff to have deep sitz baths, take Feldene and muscle relaxers in the form of Elavil, and to start on mobilization exercises. Claimant stated that the only restriction placed upon her by Dr. Hunter was to do no lifting. Claimant did not show up for her appointment with Dr. Hunter two months later on August 6, 1985.
 
 
 9
 On September 13, 1985, claimant underwent a consultative examination by Dr. Charles A. Barlow at the request of the Social Security Administration.[1] Dr. Barlow found that claimant had L-5 sacral intervertebral disc space narrowing commensurate with her stated age. The incision was well healed. The sacroiliac joints of the lumbar vertebra were normal. The straight leg raising tests was bilaterally negative. The leg lengths were equal, and the thigh and calf circumferences were symmetrical. There was no neuropathy in the lower extremities and no pathologic reflexes were elicited.
 
 
 10
 On October 1, 1985, claimant was seen by Judy Brown, a RN in Dr. Hunter's office. Her report states:
 
 
 11
 Virginia Edwards is still complaining of some right leg pain. She is somewhat vague. She is extremely tender in the right hip joint, also in the S1 joint on the right. She did not get the Feldene Dr. Hunter had recommended. I gave her a sample of it and a prescription for physical therapy for heat, massage, ultrasound to the S1 joint and both hips. She will call us in a week and if she is not having any problem with the Feldene, we will give her enough for another week and if no better, we will put her in the hospital for daily physiotherapy and possibly blocks.
 
 
 12
 Claimant did not return to Dr. Hunter's office prior to filing her application for benefits.
 
 
 13
 In February, 1986, Dr. Hunter, the operating surgeon, was sent a General Medical Report form by the Social Security Administration. Instead of completing the form, Dr. Hunter attached a report from Dr. Long, a neuropsychologist who had examined claimant prior to surgery, the report of surgery, and the discharge summary. Dr. Long's report stated that the results of the functional pain assessment prior to plaintiff's surgery revealed no major functional factors which might be serving to augment plaintiff's overall pain experience. The discharge summary stated that claimant did well postoperatively.
 
 
 14
 At the hearing before the ALJ on September 3, 1986, claimant testified that she could do light sweeping and cooking, but was unable to do heavier household tasks without experiencing pain. Her daughter testified that claimant hardly ever took the pain medication which had been prescribed because she feared becoming addicted to it. Claimant testified that she did not follow the doctor's instructions as to prescribed dosage, but took the medication when she felt like it.
 
 
 15
 Claimant also stated that she had not seen a doctor for treatment for over a year because of her inability to pay. Claimant's counsel requested the ALJ to keep the record open for a current evaluation by Dr. Hunter, indicating that claimant had an appointment with Dr. Hunter on September 23rd, 1986. The ALJ agreed to keep the record open for 15 days after the date of the evaluation.
 
 
 16
 Dr. Hunter completed a physical capacities evaluation on claimant on October 2, 1986, which was admitted into the record. Dr. Hunter's report did not state whether his evaluation was based on a recent examination of claimant or on his prior examination of June 4, 1985. Dr. Hunter's medical assessment of claimant's residual functional capacity stated that claimant was limited to walking for one hour at a time and sitting for two hours at a time with the same limitation applying to her activities during an eight hour day. Dr. Hunter's assessment was not supported by any clinical evaluations or testing results.
 
 
 17
 The ALJ rendered his decision on November 7, 1986. The ALJ found that claimant failed to establish the existence of a severe impairment which would significantly limit her ability to perform basic work activities and denied benefits under 20 C.F.R. 416.921. The Appeals Council denied claimant's request for review on March 11, 1987. The ALJ's decision thus became the final decision of the Secretary.
 
 
 18
 Claimant appealed to the district court pursuant to 42 U.S.C. Sec. 405(g). The district court referred the case to a United States Magistrate, who issued a Report and Recommendation on September 28, 1988, recommending that claimant's complaint be dismissed. On December 12, 1988, after considering de novo claimant's objections, the district court adopted the magistrate's report and recommendation. Claimant thereafter filed this timely appeal.
 
 II.
 
 19
 This court has jurisdiction on appeal to review the Secretary's final decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 20
 The claimant has the ultimate burden to establish an entitlement to supplemental security income by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A). Supplemental benefits are available to one who has not worked a minimum of five years out of a 10 year period. If the claimant is working and work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. 416.920(b). If the claimant is not found to have an impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activity she does not have a severe impairment and therefore is not disabled. 20 C.F.R. 416.920(c). Basic work activities means the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. 416.921(b)(1). An impairment is non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." Ferris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir.1985).
 
 
 21
 Claimant argues that the Secretary failed to apply the appropriate standard in determining that claimant did not establish a severe impairment because he did not afford appropriate probative weight to the medical evidence of the treating physician. We reject this argument.
 
 
 22
 "The medical opinions and diagnosis of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. This is true, however, only if the treating physician's opinion is based on sufficient medical data." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985) (citations omitted). The ultimate determination of disability for the purposes of the Social Security Act is the prerogative of the Secretary, not of the treating physician. 20 C.F.R. Sec. 416.927.
 
 
 23
 In the instant case the physical capacities evaluation of the treating physician is not supported by any underlying clinical findings or test results. Claimant argues that the district court erred in accepting the conclusion of the United States Magistrate that the treating physician had not examined claimant in over a year. However even assuming arguendo that the assessment is based on a recent examination of claimant, it does not contain any medical data to support the treating physician's conclusion that claimant was limited to walking for one hour at a time and sitting for two hours at a time. See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir.1986) (doctor who had seen plaintiff 66 times did not support letter stating plaintiff was disabled with underlying clinical data).
 
 
 24
 On the other hand, the Secretary relies on a one-page letter from Dr. Barlow, a board-certified orthopedic surgeon, stating that the incision was well-healed and there was no evidence of neuropathology in the lower extremities or of pathologic reflexes. This letter was based on x-rays of the spine that revealed normal sacroiliac joints of lumbar vertebra and on tests, such as the straight leg raising test and trendelenberg test, which revealed no positive findings. As the government argues, Dr. Barlow's letter represents substantial evidence that although claimant was unable to work for a period of time following back surgery, her current condition was not significantly limiting and did not rise to the level of a severe impairment.
 
 II.
 
 25
 Claimant argues that the Secretary's finding that claimant's allegation of severe disabling pain was not credible is not supported by substantial evidence. We reject this argument.
 
 
 26
 We review appellant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 27
 Although the first prong of Duncan may be satisfied in the instant case by evidence of claimant's lumbar spondylosis that resulted in back surgery, the second prong of Duncan has not been met. We find that substantial evidence in the record supports the Secretary's finding that claimant's subjective complaints of disabling pain were not supported by objective evidence. There are no post-surgery reports that confirm the severity of the alleged pain. Dr. Barlow's report found no evidence of neuropathy in the lower extremities and no pathologic reflexes. There is no indication that claimant sought treatment on a regular basis or complied with her recommended medication.
 
 
 28
 For the foregoing reasons, the district court's judgment is affirmed.
 
 
 
 [1]
 Claimant initially filed an application for supplemental security income on August 13, 1985, but the claim was denied because claimant's condition had not prevented her from work for twelve continuous months